[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
A memorandum of decision dated June 21, 1995, was issued in this case, which involved the dissolution of a partnership known as Redding Group Services (RGS), by its partners, the plaintiffs, Wellington Systems, Inc. (WSI), and WSI's two principal shareholders and officers, Fred Stahl and Gene Goodman, and the defendants, Redding Group, Inc. (RGI), and RGI's two principal shareholders and officers, John Theys and Lydia Fazio.
After this decision was rendered, the defendants sought reargument on certain issues that had been previously decided, and also moved for an articulation or reargument regarding several issues involving the accountings submitted by the respective parties that had not been adequately addressed by the court. Reargument was granted as to these latter issues and the parties subsequently had oral argument and filed memoranda. The parties appear to agree that if the court would decide these remaining issues, then the parties themselves could determine the actual amount of money owed to whom. Any such agreement is premised on a choice by the court of one of the two accountings submitted by the plaintiffs and by the defendants. The defendants' accounting, Exhibit C, is to be utilized for this purpose because it is more understandable, comprehensive, and is more closely based on the credible evidence.
The first controversy involves the purchase of stock in a company known as TU II. The plaintiffs claim that this stock was purchased for the joint benefit of themselves and the defendants. CT Page 360 The evidence, however, indicates that this stock was purchased by the plaintiffs with their money, held in their own names, and ultimately sold by the plaintiffs for their own benefit. There is no reason to charge the defendants for the purchase thereof as set forth in the plaintiffs' proposed accounting.
The next item is a bill from a law firm, Kleban Samor, of which $2 $2,750 is in dispute. The plaintiffs claim the legal services were rendered for defendants in reviewing contracts between the defendants and their customers, whereas the defendants assert that the services were rendered as part of the sales function, a responsibility of the plaintiffs. The legal services, however, are a joint expense, to be shared on a 50% — 50% basis, because the work was done primarily for the partnership, RGS.
Diskettes and manuals have also engendered a controversy both as to the number produced and the cost thereof. The original decision pointed out that the parties had agreed in writing that in general the defendants would be compensated for production of these items at the rate of $10 per diskette and a minimum of $5 per manual. However, compensation for the defendants' key program, GrafTalk, is properly charged at a cost of $20 both per manual and per diskette as proposed in the accounting submitted by the defendants. The better evidence is to the effect that 1,622 GrafTalk diskettes and manuals were produced by the defendants, as well as another 311 programs other than GrafTalk. The total cost of such production was $68,345, and the defendants are entitled to be reimbursed in this amount.
Also at issue between the parties is revenue received from Zenith after the dissolution of RGS in July, 1984, and before the contract with Zenith terminated over one year later. As pointed out in the original decision, purchasers of the software involved in this case, such as Zenith, were under no obligation to purchase any specific amount, other than a minimum which is not relevant in this case. The court sees no reason to treat the Zenith contract any differently that the other contracts which produced revenue after the partnership was dissolved, and hence declines to award to the plaintiffs any part of such revenues.
Jorge Dorfman's salary should be allocated entirely to the plaintiffs as he was hired by them, and worked for them. There are small expenditure to companies known as Group IV and Rapid Graphics for advertising related expenditures which should be CT Page 361 split 50% — 50% between the plaintiffs and the defendants as such expenditures were of benefit to the partnership and hence to both parties. In like manner, other expenses for advertising, which is a topic of dispute between the parties, should also be treated as expenses for the joint benefit of the partners as the purpose of such expenditures was to increase sales, and accordingly should be split 50% — 50%.
So Ordered.
Dated at Stamford, Connecticut, this 2 day of January, 1996.
William B. Lewis, Judge